JOSEPH S. RICHARDSON v. CHARLES W. HORN.

*Pleading—Evidence—Contract—Fraud.*

Under the plea of *payment*, the defendant must prove payment, otherwise judgment will be rendered in favor of the plaintiff, if there be no other defence.

Evidence of fraud in obtaining a contract will be admitted under the plea of *nil debet.*

A contract obtained upon false representations made with a fraudulent design, with intent to deceive the party making it and he having entered into the same by reason of such deception, may be recinded, if steps be taken for that purpose within a reasonable time after discovery of the alleged fraud.

If the defrauded party does not wish to rescind the contract, he may bring an action of deceit and recover damages for the fraud practiced upon him.

The lessee of a mill property has a reasonable time to ascertain whether the mill and machinery connected therewith are capable of doing the work represented by the owner, and if found incapable, the contract may be rescinded at once. Two or three weeks is a sufficient time for this investigation.

Mere commendation of property by the owner, such as vendors usually make, cannot be termed such a fraudulent representation as would be sufficient for rescinding the bargain. The purchaser or lessee of property must, to some extent at least, use his eyes in dealing for property before him.

(*New Castle, November, 1887.*)

ACTION of debt for rent on a lease dated June 12, 1885 of a mill and premises for three years at three hundred dollars per annum. Amount sued for being two hundred dollars. The lease was proved and put in evidence.

Joseph S. Richardson, plaintiff, testified: Possession was given and taken on the twelfth day of June, eighteen hundred and eighty-five, the date of the lease. The defendant then paid me two hundred dollars in advance, and that is all he has paid me.

Charles W. Horn, defendant, testified: The plaintiff represented to me that the mill was in all respects in first class order and that there was plenty of water to run it eight months in the year, and stated to my brother, who was present, that if he would run the mill as he should, with the custom his father could give him from his carriage shop he would make five thousand dollars a year.

*Anthony Higgins,* for the plaintiff, asked the Court to charge the jury that if Horn discovered within a month after he took possession of the mill that he had been defrauded as alleged by him, he should have rescinded the contract at once, and not have delayed until months afterwards to do so. 2 Saund., Pl. and Ev., 61; 2 Greenl. Ev., Sec. 231, 281a, 280; 28 E. C. L., 44; 5 M. and W., 83; Benj. on Sales, Sec. 462, 463. For if he unduly delay to return the goods or to tender them, he forfeits his right to repudiate the contract. 107 Mass., 220; 2 Allen, 212; 8 Allen, 334.

*Charles B. Lore,* for the defendant: No special plea of fraud was necessary in this case, but it might be proved under the plea of *nil debet,* Ch. Pl., 482. The misrepresentations proved were sufficient to defeat the plaintiff's action. Add. on Cont., 126, 127,

128; 102 Mass., 217, 220; 2 Allen, 212; 8 Allen, 334; 3 Comp., 506; 5 Houst, 401; 4 Dennis, 454; 28 E. C. L., 44; 13 Johns., 302.

COMEGYS, C. J., charging the jury:

This is an action of debt, brought by the plaintiff, Joseph S. Richardson, to recover from the defendant, Charles W. Horn, two installments, of one hundred dollars each, of the rent of certain mill premises in this county, just beyond the limits of the City of Wilmington, secured by a lease thereof executed by the parties on the 12th day of June, 1885, which installments fell due, respectively by the terms of the lease on the 12th day of March and the 12th day of July, 1886. By those terms the rental per year was to be three hundred dollars, two installments of which ($100.00 each) were to be paid at the execution of the lease. This would cover eight months. The others were to be paid respectively in advance. Therefore, as before stated, according to the lease—which was for three years—an installment of one hundred dollars became payable on the 12th day of March, 1886, and another on the 12th of July, following. Payment of them not having been made, this action was brought on the 17th day of September, 1886, to recover them. The defendant duly appeared to the suit, and, in his defence, filed two pleas, one *nil debet*, that is, that he did not owe the plaintiff anything, the other *payment*, that is, that whatever he owed had been paid. As no evidence of any payment has been offered, if the case stood upon that plea alone, the plaintiff would be entitled to a verdict for the amount claimed by him: but his other plea denies any indebtedness, and by a liberal course on the part of the plaintiff's counsel, no formal objection was made by him to the introduction of evidence on the part of the defendant to support a defence of fraud in the making of the lease, which is his sole reliance for defeating the plaintiff's action. The plea of *nil debet*, where issue is taken upon it (as in this case) opens a wide field into which a defendant is allowed to enter, and usually to select

whatever defence he may choose, and produce it before a court and jury without any specific notice to the plaintiff. The equitable rules of the common law with respect to defences under the plea on *non assumpsit*, are well established and known: and they have been frequently produced and allowed in actions of debt as authority for defences under the plea of *nil debet*. We do not, by this, mean to say, that fraud may be always set up by proof in actions of debt although it may not have been pleaded specially; but only, that according to a not very uncommon usage, it is often allowed.

The defence then, in this case, is fraud: that is, that the lease was signed by the defendant by reason of certain false representations made by the plaintiff to him while they were in treaty for a lease, that those representations were known to the plaintiff to be false, and that they were made to the defendant with intent to deceive and mislead him. Much evidence has been offered by the defendant in support of his plea of fraud, which the plaintiff has offered evidence on his side to rebut. The value of this testimony on the one side or the other, it is for you to judge of. It is not the province of the Court to decide between conflicting witnesses—which class of them, those for the plaintiff or defendant, is entitled to the greatest weight—on consideration of value; that is for the jury alone. The Court gives the jury the law, and they apply it to the facts, when they have determined what facts they adopt as the true ones by which their judgment should be formed.

Fraud, if one party to a contract practices it upon the other, to induce him to enter into such contract, is a good defence to an action upon it. As a general proposition, this is indisputable. It vitiates the contract as it is said; and if properly taken advantage of, when discovered, is a complete defence to a suit to recover damages for breach of it, or money secured by it. Cases upon which the question of fraud has been made, are by no means uncommon: three of them have been cited from our own reports, and many from reports of cases tried elsewhere. The law is recognized as the same in every one of them, when the Court has felt called

upon to express their opinion concerning it. It is, that the kind of representation necessary to make the conduct of a vendor of property (for example) fraudulent in law is this—his representations, with respect to the value or quality of it, must have been false; that they were made with a fraudulent design, that is to deceive the vendee, with respect to such quality or value; and that the vendee was deceived by them, and entered into the contract because of them. All these circumstances must concur, in order to justify a vendee in rescinding (that is putting an end to or avoiding) the contract. In order, however, to rescind a contract, the party desiring to do so, must take his steps for that purpose within a reasonable period from the time when he discovers the alleged fraud: otherwise his right to rescind will be treated as waived, or given up. He will not, however, be without remedy. Although the fraud be known to him, he may still retain the possession of the property purchased, and bring an action of deceit against the vendor, and recover against him damages for the fraud practiced upon him. Such a contract therefore is not void utterly: it may be made such, if the vendee repudiate it in time—that is, in a reasonable time after he discovers the supposed fraud, as has been before said. But if this be not done, it will be taken to be ratified. The vendee, however, may still sue for the wrong done, by the fraudulent deceit of the vendor, and have recovery, if the fact of his case warrant it. It is more correct, therefore, in treating of such contracts, to say they are voidable by the vendee for fraud, Vitiation is not avoidance: it is, under circumstances, ground for it.

Although fraud practiced upon a party to induce him to enter into a contract, and contract made in virtue of such practice, will entitle the defrauded party to repudiate and rescind, or get rid of and annul it; yet to avail himself of this relief, he must, in a reasonable time after the discovery of such fraud, return to the vendor the property purchased, or offer to return it to him, signifying to him in some intelligible way, that his object in so doing is

to avoid the contract altogether. This Court has passed on the question of reasonable time in the case of the fraudulent sale of a horse, and held that in such case, where the vendor and vendee resided within flfteen miles of each other, the notice of rescission of the contract, should be given the day after the fraud was discov-covered. In the case before the jury, the lessee of the property —who is grantee of a term of years, and stands therefore for the purposes of this charge, in like situation to a vendee of land— entered into possession of it under the lease, and remained in possession by those holding under him, for a period of near twelve months from the time when the lease began to operate. In fact there does not seem to be any proof before the jury that he may not now be in possession of it. But, paying no attention to that suggestion, he certainly held the possession, by his own alleged declaration to the plaintiff in front of his office in Wilmington, down to some day, not given, in the month of May, 1885. Now, while the defendant had the right to remain in the occupation of the premises rented long enough to ascertain whether the representations made by the plaintiff as to the character or quality of the property leased were true, yet he had no privilege of taking more time than was necessary for that purpose. It therefore becomes important to determine what, in the case of such property, it would be necessary to do, to test its condition. What would a reasonable man have done, in the premises: what would you, as reasonable men, have done under similar circumstances, if you wished to be able to exercise the right of avoiding the contract and giving up the property, in case it was not what the plaintiff represented it to be, and upon whose representations you took it ? I think I may venture to say that a man of reasonable prudence (and the law supposes all men to be such) would have set himself to work, in due time, not immediately, but as soon after his possession of such leased property as this was, to ascertain its true condition ; and that if he felt himself incompetent to make a proper judgment upon examination by him to be made, he would employ a person of

the necessary skill and experience to assist him. In this case, it would be reasonable to expect that the defendant, as he was neither mill-wright nor miller, would have procured the services of such persons to make examinations of the mill, its water power machinery, its steam power, and every thing else which goes to make up a good mill property of the kind he leased. But he seems to have done nothing of the kind : on the contrary, although he contends he soon discovered that, in consequence of the defective or misplaced boiler and engine, and other defects, the mill was not at all what he bargained for as lessee, yet he went on to repair what was needed in that respect, and removed both the engine and boiler to other places than those where they were planted. Still he found, as he claims he has shown before you, that the mill had not the power he was led to expect, from the plaintiff's alleged representations he supposed she had—but yet after all this trial, he continued to keep possession of her and actually hold her, as before mentioned, for almost a year after he took possession under his lease ; and, so far, as there is any proof before you, he never opened his mouth to the plaintiff to make any complaint of false representation, until the time of the referee meeting—at least four months from the time the lease was signed. But then, he did not make any claim of right to rescind or give up his lease ; he only complained of, or charged, a particular representation as to quality, which the plaintiff denied. It is impossible to contend, with any reasonableness, that the defendant required four months to ascertain the condition as to repair and efficiency of that mill-property. It surely cannot take any such length of time to determine, when one has rented a mill, whether it corresponds upon examinations with what the lessor assured him it was. He is bound, for his own interest, to use no delay, which a reasonable man would not need or practice, in finding out all he needs to know to decide whether he will keep the property or not. We feel justified in saying to you, that if there were no obstacle in the way, a man ought to be able to find out in a week or two at most, whether a boiler and engine in a mill were in the right place, whether they were of sufficient power to drive

efficiently the machinery with which they were connected, and whether the water portion of the machinery, or attachments were adequate for its purpose, and whether all together were in a proper state of repair, or fitness, to run the establishment for three years. Raising steam and letting on the water would have shown the adequacy or inadequacy of the power; inspection by an engineer, a boiler maker, and a mill-wright, and miller would have shown the state of repair.

It is unnecessary to say any more upon the question -- what are representations upon which a defendant under circumstances like the present, has a right to rely in purchasing property—more than this, that they must be something more than mere commendations such as vendors usually make: they must be such as are not only calculated to assure the vendee that the property for which he is in treaty is of a particular quality, for instance, but were designedly made to impress the vender with their truth, and thus induce a reliance upon them. It is well known that sellers of property are generally unstinted in their praises of what they have to dispose of: it would be an anomaly for a suit to be brought or defended upon such puffing. Besides a man must, to some extent at least, use his own eyes, where the property is before him when he is in treaty for it: when they will not give him the necessary knowledge, he ought to employ those of some person who is capable of giving him the necessary knowledge—in cases like this, machinists, engineers, mill-wrights, millers.

In this view of the law, it is our duty to say to you, that the defence made in this case is not sufficient to defeat the claim of the plaintiff for the instalments under this lease of one hundred dollars each, which respectively became payable on the twelfth day of March, and on the 12th day of July, 1886. He is therefore entitled to your verdict for them. And this instruction does not, in any respect affect the defendant's right to sue the plaintiff for the alleged deceit and false representation, if any were made.

Verdict for the plaintiff.